La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Por primera vez, tras la aprobación de la Ley Púb. Núm. 109-59, infra, tenemos la oportunidad de examinar la controversia siguiente: si de acuerdo con la Cláusula Colectiva de una póliza comercial de automóvil —cuyo asegurado nombrado es una empresa de vehículos de alquiler— la compañía aseguradora responde por los daños que ocasione un arrendatario a un tercero. Esto, pues la compañía aseguradora arguye que el arrendatario no es asegurado según los términos, las condiciones y las exclusiones de la póliza. Añade que tampoco está cubierto por el Contrato de Seguro tras no pagarpor un seguro suplementario que se le ofreció con el Contrato de Arrendamiento.
Ante las circunstancias particulares de este caso, concluimos que los términos en los que está redactada la Cláusula Colectiva de la póliza comercial de automóvil examinada incluyen al arrendatario como asegurado; ello a pesar de que el asegurado nombrado en la póliza sea una empresa de vehículos de alquiler y que esta no sea responsable por los actos del arrendatario de acuerdo con una ley federal. Esto es así ante la ausencia de un endoso o exclusión en la póliza que libere a la aseguradora de responsabilidad cuando un arrendatario renuncia en el contrato de alquiler de auto al pago de una cubierta suplementaria. Por otro lado, tampoco aplica la Cláusula de Exclusión por Responsabilidad Contractual.
I
El 27 de marzo de 2007, el Sr. Santiago Negrón (en adelante conductor o señor Negrón) alquiló un automóvil propiedad de la empresa de vehículos de alquiler Enterprise Rent-A-Car Company (en adelante Enterprise o dueño). Para esa fecha, Enterprise contaba con la póliza comercial de automóvil (Business Auto Policy) 09-518-0192957-1/000 emitida por Universal Insurance Company (en adelante *569 Universal o aseguradora)(1) y cuyo acuerdo general de cubierta disponía:
We will pay all sums an “insured” legally must pay as damages because of “bodily injury” or “property damage” to which this insurance applies, caused by an “accident” and resulting from the ownership, maintenance or use of a covered “auto”. Apéndice de la Apelación, pág. 61.
En el Contrato de Alquiler, Enterprise le ofreció al señor Negrón la opción de comprar un seguro suplementario (supplemental liability protection).(2) No obstante, el señor Negrón declinó pagar por este.
El 2 de abril de 2008, la Sra. Olga I. Natal Cruz (en adelante parte recurrida) presentó una acción directa contra Universal por los daños y peijuicios sufridos en un choque vehicular en conformidad con el Art. 20.030(1) de la Ley Núm. 77, infra, 26 LPRA see. 2003(1).(3) Alegó que el 9 de abril de 2007 sufrió lesiones cuando su vehículo fue impactado por el vehículo de Enterprise mientras el señor Negrón lo manejaba. Señaló que el señor Negrón era un asegurado adicional, según la Cláusula Colectiva de la Póliza Comercial de Automóvil 09-518-0192957-1/000 (Cláusula Colectiva), ya que fue autorizado por el asegurado *570 nombrado a utilizar el vehículo y no existía una exclusión por arrendamiento.(4)
A contrario sensu, Universal negó responsabilidad. Indicó que Enterprise era el único asegurado en el Contrato de Seguro. Apuntó que la póliza cubría solamente los daños causados por el asegurado nombrado, sus empleados y funcionarios cuando utilizaban el automóvil asegurado en gestiones de la empresa; no así los causados por un arrendatario. Planteó, a su vez, que el señor Negrón renunció a la cubierta ofrecida en el Contrato de Arrendamiento. Además, argumentó que aunque se concluyera que el conductor era un asegurado adicional según la Cláusula Colectiva, le aplicaba la exclusión por responsabilidad contractual. Argüyó que esta excluía aquellas obligaciones asumidas por el asegurado en el ámbito contractual; en este caso el Contrato de Alquiler.(5)
Mediante una Resolución de 29 de abril de 2011, el Tribunal de Primera Instancia determinó que el señor Negrón era un asegurado adicional de Universal. Posteriormente, el Tribunal de Apelaciones denegó expedir el auto de certiorari peticionado. Entendió el tribunal a quo que la póliza disponía como asegurado a cualquier otra persona que no fuera el asegurado nombrado mientras utilizaba el automóvil con permiso de este y que el Contrato de Arrendamiento no formaba parte de la póliza.
Inconforme, Universal acude ante nos mediante recurso de apelación y señala los errores siguientes:
(1) Erró el Tribunal de Apelaciones y el Tribunal de Instancia al resolver contrario a derecho que el codemandado Santiago Negrón es un asegurado adicional en la póliza de seguros ex-pedida por la compareciente a favor de Enterprise Rent-A-Car, a pesar de ser un hecho incontrovertido que el Sr. Negrón ex-presamente declinó la póliza de UNICO por poseer la cubierta *571 que le ofrecía su aseguradora, Cooperativa de Seguros Múltiples.
(2) Erró el Tribunal de Apelaciones y el Tribunal de Instancia al ignorar la exclusión “contractual liability” contenida en la póliza comercial expedida por UNICO a favor de Enterprise Rent-A-Car.
(3) Erró el Tribunal de Apelaciones y el Tribunal de Instancia al ignorar las cláusulas contractuales contenidas en el contrato de alquiler a corto plazo suscrito por el conductor, Sr. Santiago Negrón, documento estipulado por las partes. Apelación, pág. 7.
El 30 de marzo de 2012 acogimos el recurso presentado como certiorari y expedimos. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.
HH H-1
De umbral, debemos examinar el posible desplazamiento de la ley local por una ley federal, así como su efecto sobre la controversia presentada.
En el caso de autos, Universal indica que en la medida en que no existe una reclamación contra una empresa de vehículos de alquiler, según lo dispuesto en la Ley Púb. Núm. 109-59 de 10 de agosto de 2005 (119 Stat. 1935), 49 USC sec. 30101 et seq., conocida en inglés como Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), resulta forzoso concluir que la reclamación tampoco procede contra la aseguradora. A contrario sensu, la parte recurrida expresa que la disposición federal a la que la aseguradora hace referencia no aplica al caso de autos.
Es norma reiterada que el derecho estatal cede ante el principio de la supremacía de las leyes del Congreso. Vega v. Soto, 164 DPR 113 (2005). A consecuencia de la Cláusula de Supremacía, Art. VI, Const. EE. UU., LPRA, Tomo 1, ed. 2008, se ha elaborado la Doctrina del Campo Ocupado para evitar conflictos regulatorios y fomentar una política uniforme sobre una materia *572 específica. Esta doctrina postula que la ley federal tiene supremacía sobre la legislación de un estado cuando la ley federal así lo expresa o cuando no cabe duda de que la intención federal es reglamentar la totalidad de la materia. SLG Semidey Vázquez v. ASIFAL, 177 DPR 657, 678 esc. 20 (2009), citando a M. Velázquez Rivera, Validez legal de la reglamentación por la Asamblea Legislativa de la importación, venta y posesión en Puerto Rico de perros de la raza Pit Bull, 63 (Núm. 1) Rev. Jur. UPR 1, 16 (1994); S.L.G. v. S.L.G., 150 DPR 171 (2000). Examinemos, entonces, las disposiciones federales y estatales pertinentes.
El Art. 21.01 de la Ley Núm. 22-2000, según enmendada, conocida como Ley de Vehículos y Tránsito del 2000 (9 LPRA see. 5621), en esencia dispone que el dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación del vehículo si interviene culpa y negligencia. Esta responsabilidad incluye los daños causados por una tercera persona que obtenga la posesión mediante la autorización expresa o tácita del dueño.(6)
Así las cosas, en el 2005 se aprobó la Ley Púb. Núm. 109-59, supra. Esta ley contiene la See. 30106, también conocida como “The Graves Amendment” (en adelante See. 30106), que dispone en su primer inciso:
[...] An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
*573 (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner). 49 USC sec. 30106(a)(l)-(2).
La Sec. 30106 inequívocamente expresa la intención del Congreso de desplazar toda ley o jurisprudencia estatal que imponga responsabilidad vicaria a los dueños de vehículos de alquiler o de arrendamiento financiero por daños causados durante el periodo de alquiler o de arrendamiento financiero de un vehículo.(7) Esto, siempre y cuando, no se deba a la negligencia o culpa del propio dueño. No obstante, la See. 30106 no desplaza aquellas leyes estatales que impongan “responsabilidad financiera” o requisitos de seguro al dueño de un vehículo por el privilegio de registrarlo y operarlo, como tampoco la responsabilidad de empresas de alquiler o arrendamiento financiero por no cumplir con su responsabilidad financiera o con los seguros requeridos.(8)
Dispuesto lo anterior por el ordenamiento federal, en el 2010 nuestra Asamblea Legislativa enmendó el Art. 21.01 de la Ley 22-2000, supra, para cumplir con este mandato.(9) Este artículo ahora dispone, en lo pertinente:
*574 [e]n ausencia de negligencia o conducta criminal, el dueño de un vehículo de motor que se dedica al alquiler de vehículos de motor no será responsable de los daños ocasionados a terceros como resultado del uso, operación o posesión del vehículo de motor por un arrendatario bajo la vigencia de un contrato de alquiler a corto o largo plazo.
Sin embargo, la disposición federal no conlleva la interpretación que sugiere Universal, es decir, que no procede la reclamación contra la aseguradora.(10) La controversia de este pleito se limita a la responsabilidad, si alguna, que tiene Universal para con el señor Negrón si se concluye que este es un asegurado adicional de la póliza. En ningún momento se está responsabilizando a Enterprise por ser el dueño del vehículo en cuestión. No debe confundirse la ausencia de responsabilidad del dueño del vehículo en un negocio de arrendamiento y la responsabilidad de la compañía aseguradora según una Cláusula Colectiva.
Una situación similar se presentó recientemente ante un foro apelativo del Estado de Florida. En Patterson v. Firstlease, Inc., 37 Fla. L. Weekly D 2452 (2012), una me-nor fue impactada por un camión que conducía un empleado de Drop Ship Direct, Inc., que, a su vez, lo había alquilado a Firstlease, Inc. Esta última tenía un seguro con Harco National Insurance Company. Luego de varios *575 trámites procesales, la parte demandante solicitó una Sentencia Declaratoria contra la compañía aseguradora en la que se determinara que la póliza incluía como asegurados al conductor y al patrono-arrendatario. Esto, pues, la póliza designaba a Firstlease como asegurado nombrado así como a cualquiera mientras utilizara con su permiso un automóvil asegurado.
Aunque existía un endoso que limitaba la cubierta al arrendatario, este no cumplía con los requisitos estatutarios para ello. Ante esta situación, la aseguradora argumentó que la See. 30106 no permitía que se estableciera responsabilidad contra el dueño del vehículo de alquiler según el principio de responsabilidad vicaria y que, a su vez, la aseguradora se beneficiaba de dicha disposición. Por último, el tribunal concluyó que la See. 30106 no aplicaba puesto que la acción no era en contra del dueño del vehículo sino contra el arrendatario y su empleado. En ese caso, ambos eran usuarios autorizados y, por lo tanto, asegurados.
Examinado lo anterior, procedemos a analizar el derecho aplicable a la controversia ante nos.
HH HH I—I
A. El Contrato de Seguro
En Puerto Rico, el negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880 (2012); Integrand Assurance v. CODECO et al., 185 DPR 146 (2012); Jimenez López et al. v. SIMED, 180 DPR 1, 8 (2010); S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372, 384 (2009). Véase, además, R. Cruz, Derecho de seguros, San Juan, Ed. JTS, 1999, pág. 6. Es por ello que ha sido reglamentado extensamente por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como Código de Seguros de Puerto Rico, 26 LPRA sec. 101 et sea., y el Código Civil rige *576 de manera supletoria. S.L.G. Francis-Acevedo v. SIMED, supra.
A este contrato de gran complejidad e importancia se le define como aquel por el que una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable si se produce un suceso incierto previsto en el mismo. 26 LPRA see. 102. Por lo tanto, su propósito es indemnizar y proteger al asegurado transfiriendo el riesgo a la aseguradora si ocurre el evento especificado en el contrato. Integrand Assurance v. CODECO et al., supra; S.L.G. Francis-Acevedo v. SIMED, supra; Echandi Otero v. Stewart Title, 174 DPR 355 (2008).
Los términos del contrato de seguro están contenidos en la póliza. Maderas Tratadas v. Sun Alliance et al., supra. La póliza es el instrumento escrito en el que se ex-presa un contrato de seguro y es ley entre las partes. 26 LPRA sec. 1114(1); Integrand Assurance v. CODECO et al., supra; Torres v. E.L.A., 130 DPR 640 (1992). Por ello, “[njingún convenio que esté en conflicto con el contrato de seguro o que lo enmiende o amplíe será válido a menos que fuere por escrito y se hiciere formar parte de la póliza”. 26 LPRA see. 1118(1). Por lo tanto, para modificar una póliza de seguro válidamente se requiere un endoso al margen o al dorso de la póliza, añadiendo palabras en el cuerpo del contrato, un documento aparte que exponga que se adjunta y que se hace formar parte de la póliza, o la redacción de un nuevo contrato que recoja el cambio convenido.(11) S.L.G. Francis-Acevedo v. SIMED, supra, pág. 390.
B. Las reglas de hermenéutica
En cuestión de hermenéutica, el Código de Seguros dispone que los contratos de seguro se interpretan globalmente, a base del conjunto total de sus términos y COn *577 diciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherida a la póliza y que forme parte de esta.(12) 26 LPRA sec. 1125. A su vez, si los términos del contrato de seguro son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 LPRA sec. 3471. Véase, además, Martínez Pérez v. U.C.B., 143 DPR 554 (1997); González v. Coop. Seguros de Vida de P.R., 117 DPR 659 (1986). Sin embargo, al reconocer que el contrato de seguro lo redacta en su totalidad el asegurador, hemos expresado que las cláusulas oscuras o ambiguas se interpretarán a favor del asegurado. Por el contrario, en ausencia de ambigüedad, las cláusulas del contrato son obligatorias. S.L.G. Francis-Acevedo v. SIMED, supra; Coop. Ahorro y Créd. Oriental v. S.L.G., 158 DPR 714 (2003); Domínguez v. GA Life, 157 DPR 690 (2002).
No obstante, la labor interpretativa no culmina ahí. Para determinar cuáles son los riesgos que cubre un contrato de seguro también debemos examinar si el contrato incluye una cláusula de exclusión. S.L.G. Francis-Acevedo v. SIMED, supra; Echandi Otero v. Stewart Title, supra; Monteagudo Pérez v. E.L.A., 172 DPR 12, 21 (2007). Las cláusulas de exclusión operan para limitar la cubierta establecida en el acuerdo general de cubierta. S.L.G. Francis-Acevedo v. SIMED, supra; Monteagudo Pérez v. E.L.A., supra, pág. 21; Meléndez Piñero v. Levitt & Sons of P.R., 129 DPR 521 (1991). Por ello, son desfavorecidas y serán interpretadas restrictivamente. Empero, la aseguradora no responderá por riesgos expresamente excluidos y que apliquen a determinada situación.(13) Maderas Tratadas v. Sun Alliance et al., supra; S.L.G. Francis-Acevedo v. SI- *578 MED, supra. Sin embargo, es necesario precisar que las dudas se resolverán de modo que se cumpla con el propósito de la póliza, siendo este proveer protección al asegurado. Maderas Tratadas v. Sun Alliance et al., supra; Integrand Assurance v. CODECO et al., supra; Barreras v. Santana, 87 DPR 227 (1963).
C. La Cláusula Colectiva y el seguro de vehículos
Sobre la figura del asegurado, hemos expresado que el término “asegurado nombrado” se refiere a las personas específicamente designadas en el contrato. De igual forma, cuando el término “asegurado” es utilizado sin cualificación, este incluye no solamente al asegurado nombrado, sino que también a las otras personas que estén protegidas por la cláusula colectiva. Sánchez v. Soler Fajardo, 87 DPR 432 (1963). En Vélez v. García Commercial, 100 DPR 645, 649-650 (1972), expresamos que
[l]a llamada omnibus clause o cláusula colectiva no es otra cosa que la cláusula que define el término “asegurado”. Véanse, 12 Couch On Insurance 2d, Sec. 45:291. Esta cláusula puede incluir como asegurado, además de a la parte contratante, a cualquier otra persona nombrada en la cláusula, incluyendo contratistas independientes, Id. See. 45:305; Sánchez v. Soler Fajardo, 87 DPR 432, 439 (1963). Las personas o clases de personas nombradas en dicha cláusula están cubiertas por la póliza aunque el asegurado contratante no tenga responsabilidad legal por los actos de dichas personas. Id. Sec. 45:293. Pérez v. Maryland Casualty Co., 78 DPR 475, 484 (1955). (Escolio omitido).
En las pólizas de automóvil, las cláusulas colectivas tienen el efecto de designar como asegurado a toda persona que use un vehículo cubierto en esta con el permiso del asegurado específicamente nombrado en ella. Particularmente en las pólizas comerciales, el asegurado nombrado es el negocio y no un individuo. New Appleman on Insurance, supra, Secs. 67.04[1] y [2]. Su permiso puede ser expreso o tácito. Sánchez v. Soler Fajardo, supra; Pérez Escolar v. Collado, 90 DPR 806 (1964).
*579 En esencia, el seguro de vehículo tiene como propósito proteger al asegurado contra cualquier pérdida, gasto o responsabilidad por la pérdida o por los daños causados a personas o propiedad como resultado de la posesión, conservación o uso de un vehículo. 26 LPRA see. 407(1).(14) Todo ello hasta el límite de la póliza. 7A Couch on Insurance 3d Sec. 108:11 (1995); New Appleman on Insurance, supra, Vol. 6, Sec. 63.01. La póliza de automóvil del caso de autos presenta una cubierta por responsabilidad civil pública, es decir, una cubierta diseñada para proteger al asegurado frente a reclamaciones instadas por terceros por los daños ocasionados a estos o a su propiedad en el ámbito de la responsabilidad extracontractual. Maderas Tratadas v. Sun Alliance et al., supra.
Es importante señalar que como toda póliza, las pólizas comerciales de auto se encuentran supeditadas a lo expresado en la póliza y en la cláusula colectiva, y no así en aquellos contratos que no forman parte de ella, tales como los contratos de alquiler. Véanse: Couch on Insurance, supra, Vol. 12, Sec. 170:3; Appleman, Insurance Law and Practice, Minnesota, West, 1979, Sec. 4453, págs. 523-526; Meridian Mut. Ins. Co. v. Gulf Ins. Co., 174 Ind. App. 51 (1977).
Examinado el derecho aplicable, procedemos a aplicar el derecho a los hechos.
*580 IV
Por estar los señalamientos de error estrechamente relacionados, los discutiremos en conjunto.
En el caso de autos no hay controversia en cuanto a que Enterprise es el dueño del vehículo en cuestión, así como que es la parte contratante y asegurado nombrado bajo la póliza 09-518-0192957-1/000. La póliza estaba vigente cuando ocurrió el accidente. Tampoco está en controversia si el dueño del vehículo tiene responsabilidad por los daños causados por el arrendatario durante el periodo de alquiler.
No obstante, la controversia trata sobre si existe cubierta para el arrendatario y conductor del vehículo como asegurado bajo la Cláusula Colectiva para responder por su responsabilidad frente a terceros. Al respecto, Universal indica que la póliza no incluye al señor Negrón como asegurado por ser un arrendatario y no un empleado o funcionario de Enterprise que operaba el vehículo asegurado en gestiones de la empresa. También señala que no hay cubierta porque declinó la póliza en el Contrato de Arrendamiento, y que aun si se consideraba asegurado le aplicaría la exclusión de responsabilidad contractual.
Es norma reiterada que ningún convenio que enmiende, amplíe o esté en conflicto con el contrato de seguro será válido si no consta por escrito y forma parte de la póliza. 26 LPRA sec. 1118(1). Esto, pues, el Código de Seguros “interesa un contrato de seguro completo en sí mismo, que contenga todo lo acordado entre las partes y que sea por escrito”. The London Assurance v. Tribunal Superior, 95 DPR 305, 310 (1967). El que estemos ante una póliza comercial de auto no varía esta norma. Por lo tanto, concluimos que el rechazo a pagar por una cubierta suplementaria en un Contrato de Arrendamiento de forma alguna modifica el contrato de seguro. Recordemos que Universal no forma parte del Contrato de Arrendamiento, no se hace referencia a este en la póliza ante nos y hasta des *581 conocemos el contenido de la cubierta declinada en el contrato de alquiler. R.H. Long, The Law of Liability Insurance, Nueva York, Bender, 1997, Vol. 1, Sec. 1.07[2][d].
Debemos, entonces, analizar la totalidad de la póliza. Si sus términos, condiciones y exclusiones son claros, específicos y no dan margen a diferentes interpretaciones, así los debemos aplicar.
Primero, examinaremos si el señor Negrón es un asegurado bajo la Cláusula Colectiva. De contestar afirmativamente, analizaremos si existe alguna exclusión aplicable como alega la aseguradora.
La Cláusula Colectiva de la póliza especifica:
1. Who is an insured
The following are “insureds”:
a. You for any covered “auto”.
b. Anyone else while using with your permission a covered “auto” you own, hire or borrow except:
(1) The owner or anyone else from whom you hire or borrow a covered “auto”. [...]
(2) Your employee if the covered “auto” isowned by that employee or a member of his or her household.
(3) Someone using a covered “auto” while heor she is working in a business of selling, servicing, repairing or parking “autos” unless that business is yours.
(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered “auto”.
(5) A partner of yours for a covered “auto” owned by him or her or a member of his or her household.
c. Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an “insured” but only to the extent of that liability. Apéndice de la Apelación, pág. 61.
La Cláusula Colectiva identifica como asegurados claramente y sin ambigüedad a la empresa de vehículos de alquiler y a cualquiera a quien esta diera permiso para utilizar un “auto asegurado”.(15) Sus términos y condiciones no distinguen o excluyen al arrendatario de un vehículo. Por lo tanto, de los términos de la póliza comercial de au *582 tomóvil expedida a la empresa de vehículos de alquiler no podemos interpretar que el permiso aludido no le aplica al alquiler de autos y que solamente cobija a los empleados y funcionarios de la empresa en la operación del negocio y no al arrendatario como pretende Universal. Véase Sánchez v. Soler Fajardo, supra. Véase, además, CNA Casualty of P.R. v. Torres Díaz, 141 DPR 27, 41 (1996). Si la intención hubiera sido excluir el permiso concedido por un arrendamiento, lo debió hacer constar expresamente, pues mientras la aseguradora no responde por los riesgos expresamente excluidos, tiene la obligación de establecer claramente los riesgos por los que viene obligado a responder. S.L.G. Francis-Acevedo v. SIMED, supra; Meléndez Piñero v. Levitt & Sons of P.R., supra, pág. 547.
De acuerdo con la Cláusula Colectiva de la póliza, así como sus excepciones, que no aplican al caso de autos, el señor Negrón obtuvo el permiso de Enterprise para operar el vehículo. Por lo tanto, el señor Negrón está asegurado por la póliza, aunque Enterprise no tenga responsabilidad legal por sus actos. Universal está obligado a pagar las cantidades que el asegurado legalmente deba pagar como daños a la persona o propiedad aplicables causados por un accidente y resultantes del uso de un auto cubierto. Claro está, esto siempre y cuando la Cláusula de Exclusión por Responsabilidad asumida bajo contrato o acuerdo no le aplique al caso de autos. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881 (1994). Esto, pues, la extensión de la cubierta se mide a base de los riesgos que permanecen garantizados después de determinarse cuáles son sus exclusiones. Determinado que el señor Negrón está asegurado por la Cláusula Colectiva, examinemos las exclusiones del Contrato de Seguro.
Universal sostiene que aun si concluyéramos que el señor Negrón está asegurado por la Cláusula Colectiva, no debemos ignorar la cláusula contenida en el Contrato de Alquiler mediante la que el arrendatario se responsabilizó por las reclamaciones de responsabilidad de terceros al dueño. Arguye que esta cláusula se extiende a la asegura *583 dora, y sostiene que la asunción de responsabilidad del arrendatario corresponde a una exclusión contractual reconocida en la póliza.
La exclusión sobre la cual Universal dirige nuestra atención dispone:

B. Exclusions

This insurance does not apply to any of the following:

2. Contractual

Liability assumed under any contract or agreement.
But this exclusion does not apply to liability for damages:
a. Assumed in a contract or agreement that is an “insured contract;” or
b. That the “insured” would have in the absence of the contract or agreement. Apéndice de la Apelación, pág. 62.
Previamente hemos tenido la oportunidad de examinar este tipo de cláusula a la que hemos llamado cláusulas de exclusión contractual o de asunción de responsabilidad bajo contrato o acuerdo (Contractual Exclusion Clauses or Contractual Assumed Liability Exclusion). Véanse: Meléndez Piñero v. Levitt & Sons of P.R., supra, pág. 544; Vega v. Pepsi-Cola Bot. Co., 118 DPR 661 (1987); M.A. Carib. Corp. v. Carib., R. Inc., 115 DPR 681 (1984), per curiam. Véase, además, Scope and Effect of Clause in Liability Policy Excluding from Coverage Liability Assumed by Insured under Contract not Defined in Policy, such as one of Indemnity, 63 ALR2d 1122 (1959).
En Vega v. Pepsi-Cola Bot. Co., supra, pág. 667, citando a 12 Couch on Insurance 2d Sec. 44A:36, pág. 57 y ss. (1981), expresamos que este tipo de cláusula no es ambigua. Su propósito de exclusión es claro pues limita la cubierta de la póliza al campo de la responsabilidad extra-contractual del asegurado y excluye las obligaciones asumidas por el asegurado en el ámbito contractual. Couch on Insurance 3d, supra, Sec. 108:15. Sin embargo, “[l]a cláusula de exclusión contractual [no] libera a las compañías de seguros cuando la obligación asumida por el asegurado es coextensiva con la obligación legal de la cual sería res *584 ponsable ordinariamente”. M.A. Carib. Corp. v. Carib. R., Inc., supra, pág. 684. Véase, además, Long, op. cit., Sec. 1.07[2][a]; 63 ALR2d 1122, 1123 (1959). De igual forma, esta cláusula no se refiere a los incumplimientos de contrato del asegurado. Meléndez Piñero v. Levitt & Sons of P.R., supra, págs. 544-548. Véase, además, B.R. Ostrager y T.R. Newman, Handbook on Insurance Coverage Disputes, 10ma ed., Nueva York, Aspen Law and Business, 2000, Sec. 7.05, págs. 405-406.
El Contrato en controversia contiene las dos excepciones más comunes a la exclusión de responsabilidad contractual: (i) la responsabilidad que el asegurado tendría en ausencia de contrato o acuerdo, y (ii) aquella asumida en un Contrato asegurado.(16)
Universal alega que el señor Negrón asumió en el Contrato de Arrendamiento el tipo de responsabilidad que ex-cluye la Cláusula de Exclusión Contractual. En la Cláusula Núm. 8 del Contrato de Arrendamiento, el señor Negrón acordó
[...] defendefr], indemniza[r] y ha[cer] al Dueño libre de toda pérdida, responsabilidad, daño, herida, reclamación, demanda, costo, honorario de abogado y otros gastos incurridos por el Dueño de cualquier forma por esta transacción de alquiler o por el uso del Vehículo por cualquier persona, incluyendo reclamaciones o responsabilidades a terceros. [E]n cualquier caso, el Arrendatario tendrá la responsabilidad final hacia el dueño por dichas pérdidas. Esta obligación podrá limitarse si el arrendatario compra el DW opcional y/o el SLP opcional. Véase los párrafos 16 y 17 para más información sobre el DW opcional y el SLP opcional.(17) Apéndice de la Apelación, pág. 96.
En el mundo de los negocios es común que una parte se responsabilice mediante un contrato de la responsabilidad *585 de otro en lo que se conoce como “acuerdo de liberación de responsabilidad” (hold harmless agreement o indemnity clause). Meléndez Piñero v. Levitt & Sons of P.R., supra, pág. 553. En este tipo de acuerdo, una parte se compromete o asume la obligación de rembolsar o defender a otra de las reclamaciones que le haga un tercero y de las que no sería responsable si no existiera el contrato. Long, op. cit.; 63 ALR2d 1122, 1123 (1959). Tiene como propósito transferir el riesgo de pérdida económica entre los contratantes. Comentario, C. Pizarro, Judicial Interpretation of Indemnity Clause, 48 La. L.Rev. 169 (1987). Es particularmente a los acuerdos de liberación de responsabilidad que se ha aplicado consistentemente la exclusión contractual. Ostrager y Newman, op. cit., pág. 405. Por estas razones, su inclusión en la póliza conlleva generalmente un aumento en la prima para los seguros de los contratantes. M.A. Carib. Corp. v. Carib. R., Inc., supra, pág. 684. Véase, además, Ostrager y Newman, op. cit.; Long, op. cit., Sec. 1.07 [2] [d].
Al examinar la cláusula transcrita del Contrato de Arrendamiento entre Enterprise y el señor Negrón concluimos que este es un acuerdo de liberación de responsabilidad. Sin embargo, este convenio no se extiende a la aseguradora, pues no aplica a la reclamación que se le presenta a Universal. En ningún momento se le ha exigido a Universal que indemnice al dueño del auto alquilado por alguna reclamación de un tercero, con relación al alquiler. A contrario sensu, a Universal se le demanda para que indemnice a un tercero por los daños sufridos tras la alegada negligencia del conductor como asegurado; negligencia de la que el conductor sería responsable ordinariamente. Como tal, esta situación queda exceptuada de la exclusión. Por lo tanto, la Cláusula de Exclusión Contractual no aplica y no limita la cubierta del señor Negrón.
Analizada la controversia en su totalidad, resolvemos que la Ley Púb. Núm. 109-59, supra, se redactó *586 para liberar de responsabilidad vicaria a los dueños de vehículos de alquiler o de arrendamiento financiero por daños causados durante el término de alquiler o arrendamiento financiero. A su vez, del lenguaje de la See. 30106 no podemos concluir, como sugiere Universal, que en la medida en que no existe una reclamación contra el dueño del vehículo, automáticamente la reclamación no procederá contra la compañía aseguradora que este contrató. Eso no elimina los riesgos relacionados con el uso del automóvil asegurado. La existencia de cubierta dependerá del examen de la totalidad de la póliza en cuestión. Aclarado ese aspecto, resolvemos que en el caso de autos la redacción de la Cláusula Colectiva de la póliza comercial de automóvil examinada incluye como asegurado al señor Negrón como persona a la que Enterprise dio permiso a utilizar un auto asegurado. Por otro lado, al estudiar la totalidad de la póliza también observamos que en esta no se hizo formar parte ningún endoso o exclusión que dispusiera su inaplicabilidad cuando el arrendatario declinaba la compra de la cubierta suplementaria. Por consiguiente, el Sr. Santiago Negrón es un asegurado y su riesgo no ha sido limitado por exclusión alguna.
V
En conformidad con lo anterior, confirmamos la determinación recurrida. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de acuerdo con la presente determinación.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió e hizo constar la expresión siguiente, a la que se unió la Juez Asociada Señora Rodríguez Rodríguez:
El Juez Presidente Señor Hernández Denton disiente por en-tender que la determinación tomada por una mayoría de este Tribunal tiene el efecto de desvirtuar la ley federal y estatal que expresamente eximen de responsabilidad vicaria a las *587 compañías arrendadoras de vehículos de motor. Tanto la Ley Púb. Núm. 109-59, de 10 de agosto de 2005 (49 USC see. 30101 et seq.), como la Ley 22-200 (9 LPRA see. 5001 et seq.), limitan la responsabilidad vicaria de los dueños de vehículos de motor cuando estos son compañías arrendadoras de vehículos. Considerando que en virtud de dichas leyes el asegurado no tiene responsabilidad, es forzoso concluir que la aseguradora tampoco. No es posible imponer responsabilidad a la aseguradora más allá de la responsabilidad que pudiera atribuirse a la asegurada. Consiguientemente, es innecesario que las pólizas como la del caso de autos contengan cláusulas que liberen de responsabilidad a las compañías aseguradoras, pues estas ya están relevadas por ley.

 PRERAC, Inc. y/o Enterprise Rent-A-Car Company es el asegurado nombrado de la póliza 09-518-0192957-1/000 emitida por Universal Insurance Company. Esta tiene vigencia del 1 de agosto de 2006 al 1 de agosto de 2007. Apéndice de la Apelación, pág. 51.

 El Contrato de Alquiler incluye la información siguiente:
“Optional Products Notice: Our contract offers, for an additional charge, as optional products: damage waiver, personal accident insurance and supplemental liability protection. Before deciding whether to purchase any of these products, you may wish to determine whether your personal insurance or credit card provides you coverage during the rental period. The purchase of any of these products is not required to rent vehicle”. Apéndice de la Apelación, pág. 94.
En el expediente no consta cuál fue el supplemental liability protection ofrecido. Véase nota al pie de página núm. 50 del Apéndice de la Apelación.

 Apéndice de la Apelación, pág. 161. Véase Ruiz v. New York Dept. Stores, 146 DPR 353 (1998).

 El Sr. Santiago Negrón contaba con una póliza emitida por la Cooperativa de Seguros Múltiples. Esta proveyó la cubierta y emitió el pago correspondiente a Enterprise Rent-A-Car. Además, suscribió un Contrato de Transacción con la Sra. Olga I. Natal Cruz.

 Universal hace alusión a la Cláusula núm. 8 del Contrato de Alquiler. Apéndice de la Apelación, págs. 23 y 24.

 Véase Cordero Santiago v. Lizardi Caballero, 89 DPR 150 (1963), sobre el desarrollo legal de la responsabilidad del dueño de un vehículo de motor hasta la vigencia de la Sec. 13-101 de la Ley Núm. 141 de 20 de julio de 1960, y antes de la aprobación de la Ley 22-2000, según enmendada, 9 LPRA sec. 5621. Véase, además, Rodríguez v. Ubarri, Miranda, 142 DPR 168 (1996).

 Véase, además, 49 USC sec. 30103(b).

 Los incisos (b) y (c) de la Seo. 30106 de la Ley Púb. Núm. 109-59, de 10 de agosto de 2005 (49 USC sec. 30106), conocida en inglés como Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), disponen:
“(b) Financial responsibility laws.—Nothing in this section supersedes the law of any State or political subdivision thereof—
“(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or “(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.
“(c) Applicability and effective date. Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section [enacted Aug. 10, 2005] without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment”.

 Previamente, la Ley Núm. 132-2004 enmendó el Art. 21.01 de la Ley Núm. 22-2000, supra. En lo pertinente disponía: “Las disposiciones de esta sección no aplican a vehículos de motor de alquiler, mientras sea un vehículo de motor manejado por quien lo alquila o arrienda a corto o largo plazo en el momento de un accidente, los cuales se regirán por la Ley Núm. [76] de [13] de [agosto] de [1994]”.
*574 No obstante, con posterioridad a los hechos del presente caso, La Ley Núm. 230-2010 enmendó nuevamente el artículo. Al así hacer, la Asamblea Legislativa expresó: “Al examinar el alcance de la Ley Núm. 76, supra, se observa que no se menciona la responsabilidad de una persona que alquila un vehículo de motor y que por su negligencia o conducta criminal provoca daños y perjuicios a otra persona”. Añadió que “[d]el lenguaje de la Ley Federal SAFETEA-LU se desprende el mandato expreso del Congreso de prohibir específicamente nuestra ley local, ya que la primera está sustancialmente en conflicto con la segunda, y ante esto, no pueden armonizarse o coexistir al mismo tiempo”. Exposición de Motivos de la Ley Núm. 230-2010.

 “No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance”. 15 USC sec. 1012. Véase San José Realty, S.E. v. El Fénix de P.R., 157 DPR 427 (2002). Al respecto comenta R.H. Jerry, II: “Congress might on some occasions impose some regulations on the insurance business, but unless it were clear that Congress specifically intended to do so, regulation would be the prerogative of the states”. 1 New Appleman on Insurance Law Library Edition Sec. 1.03 [4] [a] (2009).

 “Un endoso es el acuerdo por escrito que se adhiere a la póliza para que forme parte del contrato con el propósito de alterar, ampliar o restringir la cubierta que dispone la póliza”. Echandi Otero v. Stewart Title, 174 DPR 355, 377, esc. 13 (2008).

 De igual forma, los principios generales de hermenéutica esbozados en el Código Civil son supletorios. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880 (2012); Banco de la Vivienda v. Pagán Ins. Underwriters, 111 DPR 1 (1981).

 Cada exclusión se lee en función del acuerdo general de cubierta e independiente de las restantes exclusiones. Meléndez Piñero v. Levitt & Sons of P.R., 129 DPR 521, 548 (1991).

 El seguro de vehículos “[e]s el seguro contra la pérdida o los daños causados a un vehículo terrestre o aeronave o cualquier animal de tiro o de montura, o de propiedad mientras estuviere en los mismos o sobre los mismos, o cargándose en los mismos o descargándose de ellos, por cualquier riesgo o causa, y contra cualquier pérdida, gasto o responsabilidad por la pérdida o los daños causados a personas o la propiedad, resultantes de la posesión, conservación, o uso de cualquiera de dichos vehículos, aeronaves o animales, o incidentales a los mismos”. 26 LPRA see. 407(1).
Como hemos señalado, “ ‘en la práctica no existe un seguro que cobije toda la responsabilidad en que puede incurrir una persona. Lo que existe son seguros de responsabilidad civil que cubren determinadas actividades del asegurado, capaces de producir daños’ ”. Soc. de Gananciales v. Serrano, 145 DPR 394, 399 (1998). Véase Meléndez Piñero v. Levitt & Sons of P.R., supra, pág. 537.

 Apéndice de la Apelación, pág. 61.

 La póliza define el término “insured contract” de la siguiente forma: “[t]hat part of any contract or agreement entered into, as part of your business, by you or any of your employees pertaining to the rental or lease of any ‘auto’. Apéndice de la Apelación, pág. 82.

 Es importante señalar que el párrafo 17 del Contrato de Alquiler (sobre el SLP opcional) al que se refiere la cláusula transcrita no fue incluido en el apéndice del recurso. Por lo tanto, no consta en el expediente información alguna sobre la llamada supplemental liability protection ofrecida y a la cual hace referencia la parte peticionaria.